UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

JOHNNY BURGESS,

    Plaintiff,

v.                                                     Case No. 2:22-cv-228-JLB-NPM

DEREK SNIDER, et al.,

    Defendants.
_____/

# ORDER

At all times relevant to the allegations in this civil rights case, Plaintiff Johnny Burgess ("Plaintiff") was a prisoner of the Florida Department of Corrections. This action stems from an alleged use of excessive force against Plaintiff while he was held at Charlotte Correctional Institution. (Doc. 1.) The Court now considers an amended motion for summary judgment filed by Defendants Snider, Ramsey, Nesbitt, Hirschy, and Crawford. (Doc. 106.)[1] Plaintiff filed a response and amended response to the motion. (Doc. 99, Doc. 107.)

After carefully considering the pleadings and the record in this case, the Court finds that Defendants Snider, Ramsey, Hirschy, Crawford, Nesbitt, and Basilio are entitled to judgment as a matter of law.

---

[1] Defendant Kaiser has not been served with process. On April 21, 2023, the Court cautioned Plaintiff that he must provide Defendant Kaiser's address to the Clerk by May 21, 2023 or this defendant would be dismissed from this action under Rule 4(m) of the Federal Rules of Civil Procedure. (Doc. 55.) Plaintiff did not provide an address for Defendant Kaiser. Therefore, Defendant Kaiser is dismissed from this action under Rule 4(m).

## I. Background and Procedural History

Plaintiff initiated this action on April 11, 2022 by filing a *pro se* 42 U.S.C. § 1983 civil rights complaint against seven officers at the Charlotte Correctional Institution. (Doc. 1 at 2–5.) He generally alleged Eighth Amendment claims of excessive force and failure to intervene based on an August 26, 2021 incident in which the defendants used chemical agents (pepper spray) against him. (Id. at 6–7.) The defendants filed a motion to dismiss the complaint, arguing that Plaintiff had not exhausted his claims or stated a claim for relief. (Doc. 44.) The defendants also asserted entitlement to qualified immunity. (Id.) In the order addressing the defendants' motion to dismiss, the Court summarized Plaintiff's relevant factual allegations as follows:

> On August 26, 2021, Plaintiff heard (through his cell window) Defendants Crawford, Ramsey, Hirschy, Basilio, and "several other unknown staff" threaten him with chemical spray, deprivation of food, placement on strip status, disposal of personal property, and beatings, in retaliation for Plaintiff having filed an earlier civil rights case. Later the same day, Defendant Hirschy came to Plaintiff's cell with a handheld camcorder. Plaintiff alleges, without explanation, that Defendants Snider and Ramsey sent Defendant Hirschy to spray him with chemical agents for no reason. Plaintiff asserts that no "Crisis Intervention Technique" was used to avoid the use of chemical agents. Defendant Hirschy ordered Defendant Nesbitt to spray chemical agents on Plaintiff even though Plaintiff "was humbly being compliant and not in violation of any rule whatsoever to provoke the use of force." Handcuffs were placed on Plaintiff during the incident, and because they were too tight, his hands swelled, and he has suffered nerve damage.

(Doc. 59 at 3 (internal citations to the record omitted).)

After liberally construing Plaintiff's *pro se* complaint as alleging six separate claims—three claims for excessive force relating to the use of pepper spray and application of handcuffs, one claim for failure-to-protect, one claim of mail tampering, and one claim for making threats (Doc. 59 at 9–10)—the Court granted the defendants' motion to dismiss in part. The Court determined that Plaintiff had not exhausted his failure-to-protect, mail tampering, or verbal threat claims against any defendant and granted the defendants' motion to dismiss as to those claims. (Id.) However, the Court found that Plaintiff's Eighth Amendment excessive force claims were exhausted and sufficiently pleaded. The Court explained:

> Plaintiff generally avers that he was sprayed with chemical agents by Defendants Hirschy and Nesbitt for no justifiable reason and that someone applied hand restraints too tightly on April 26, 2021—again, for no justifiable reason. He also argues that Defendants Snider and Ramsey expressly ordered the unjustified use of force. [FN] These allegations are sufficient to survive a motion to dismiss under the Whitley standards. The need for force and whether the force used was reasonable in light of the threat posed by Plaintiff are fact-intensive considerations that should be raised in a motion for summary judgment or at trial. Likewise, as to the defendants' argument that they are entitled to qualified immunity, "the law was clearly established that correctional officers could not use force maliciously or sadistically for the very purpose of causing harm," Skrtich v. Thornton, 280 F.3d 1295, 1305 (11th Cir. 2002), which is precisely what is alleged here. And while factual development of this claim may establish that the defendants are entitled to qualified immunity, the facts as alleged by Plaintiff do not establish that entitlement at this early stage of litigation.
>
> [FN] The defendants argue that Plaintiff's excessive force claims against Defendants Snider and Ramsey are impermissibly based on a theory of respondeat superior. However, Plaintiff alleges that Defendants Snider and Ramsey ordered the unwarranted application of chemical agents. Therefore, he has alleged their direct involvement with the force, and the Court will not address

3

> the defendants' argument otherwise. See, e.g., Thomas v. Bryant, 614 F.3d 1288, 1317 n. 29 (11th Cir. 2010) (recognizing that the "the FSP Warden's direct authorization of all uses of force and the routine application of the DOC's non-spontaneous use-of-force policy without regard to an inmate's mental health status satisfy § 1983's causation requirement").

(Id. at 19–20 (citations to the record omitted).) Specifically, the following claims survived the defendants' motion to dismiss:

> **Count I – Excessive Force (Defendants Snider and Ramsey).** Eighth Amendment excessive force claim for ordering the unnecessary use of pepper spray against Plaintiff.
>
> **Count II – Excessive Force (Defendants Nesbitt, Hirschy, and Crawford).**[2] Eighth Amendment excessive force claim for unnecessarily using pepper spray against Plaintiff.
>
> **Count III – Excessive Force (Defendants unknown).** Eighth Amendment excessive force claim for using overly-tight hand restraints on Plaintiff after the application of pepper spray.

(Id. at 9, 19–20.)

After conducting discovery, the defendants filed a motion for summary judgment. (Doc. 89.) To support their motion, they offer sworn use-of-force incident reports from Defendants Nesbitt, Basilio, Crawford, and Kaiser as well as from non-defendant Officer Thayer (Doc. 90-1; Doc. 90-2), the Reports of Force Used from the Florida Department of Corrections (Doc. 90-3; Doc. 90-4); Plaintiff's Emergency Room Record (Doc. 90-4 at 5–6), the Florida Administrative Code provisions for use of force (Doc. 90-5), and three video clips of the incident. (Doc.

---

[2] Plaintiff was inconsistent as to whether the camera operator was Nesbitt or Crawford. However, the defendants' undisputed evidence clarifies that Defendant Crawford was the camera operator and Defendant Nesbitt applied the pepper spray. (Doc. 90-1 at 1, 5.)

4

104 (Exhibits F, G, and H).) Thereafter, the defendants filed an identical motion for summary judgment that included pinpoint citations to the video clips. (Doc. 106.)

Plaintiff responded to the defendants' motion for summary judgment. (Doc. 99; Doc. 107.) While he does not dispute the authenticity of the three video clips showing the incident at issue in his operative complaint, he argues that there is a genuine issue of disputed fact regarding the defendants' activities prior to the use of pepper spray. (Doc. 99 at 3.) He also argues that the video clips do not show Defendant Basilio bending his wrist backwards when removing his handcuffs. (Id. at 4.) To refute the defendants' motion, he attaches his own affidavit; an affidavit from inmate De'Shaun Brooks; an affidavit from inmate Christopher Bowden; several use-of-force reports; a portion of the Florida Administrative Code; and his medical records regarding treatment for his wrist injury. (Doc. 99-1 at 3–55.)[3]

## II. Legal Standards

Summary judgment is appropriate only if it is shown "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a

---

[3] While many of the facts offered by the parties provide helpful context and background for the claims, not all are material to the remaining Eighth Amendment counts. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986) ("Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted."). The Court will not separately enumerate each factual allegation and determine whether it is disputed or material. Rather, the Court will set out and consider the relevant material facts (disputed and undisputed) as it addresses each of Plaintiff's counts.

matter of law." Fed. R. Civ. P. 56(a). The Supreme Court explains the summary judgment standard as follows:

> [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be no genuine issue as to any material fact, since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.

Celotex Corp. v. Catrett, 477 U.S. 317, 322–23 (1986) (internal quotation marks omitted). The movant may meet this burden by presenting evidence that would be admissible at trial, indicating there is no dispute of material fact, or by showing that the nonmoving party has failed to present evidence supporting some elements of its case on which it bears the ultimate burden of proof. Id. at 322–24.

If the party seeking summary judgment meets the initial burden of demonstrating the absence of a genuine issue of material fact, the burden then shifts to the nonmoving party to come forward with sufficient evidence to rebut this showing with affidavits or other relevant and admissible evidence. Avirgan v. Hull, 932 F.2d 1572, 1577 (11th Cir. 1991). Summary judgment is mandated "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322.

### III. Discussion

As an initial matter, the Court notes that Plaintiff raised <u>only</u> Eighth Amendment claims of excessive force and deliberate indifference (failure to

6

intervene) in his complaint. (See Doc. 1 at 6, 16–22.) He did not raise First Amendment retaliation claims, and to the extent he raises them as new claims in his response to the motion for summary judgment, the Court will not consider them. Plaintiff also asserts new factual allegations relating to the defendants' alleged failure to adequately clean his cell after the administration of pepper spray and—for the first time—asserts that Defendant Basilio "bent [his] hands in the opposite direction against the bone" when removing Plaintiff's handcuffs, causing him excruciating pain. (Doc. 99 at 4.) He also asserts, for the first time, that Defendant Basilio allowed the flap on his cell door to slam down on his hands after the cuffs were removed. (Id. at 6–7.)

Plaintiff may not amend his complaint to add new claims or facts in response to a motion for summary judgment. See Gilmour v. Gates, McDonald and Co., 382 F.3d 1312, 1315 (11th Cir. 2004) ( "At the summary judgment stage, the proper procedure for plaintiffs to assert a new claim is to amend the complaint in accordance with Fed. R. Civ. P. 15(a). A plaintiff may not amend her complaint through argument in a brief opposing summary judgment."). Moreover, conditions-of-confinement claims and claims based upon Defendant Basilio's alleged use of excessive force during the *removal* of his cuffs were not exhausted and would be subject to dismissal under 42 U.S.C. § 1997e(a) even if the Court liberally construed them as having been properly raised in the complaint. (See Doc. 59 at 9, 21 (finding that Plaintiff exhausted only the Eighth Amendment excessive force claims relating to the use of pepper spray and the application of handcuffs).) Accordingly,

this Order is directed at only counts one, two, and three as construed by the Court in its order on the defendants' motion to dismiss.  (Id. at 9.)

### A. The defendants are entitled to summary judgment on Plaintiff's excessive force claims relating to the use of pepper spray.

In count one, Plaintiff alleges that Defendants Snider and Ramsey ordered the unnecessary use of pepper spray against Plaintiff on August 26, 2021.  (Doc. 59 at 9.)  In count two, he asserts that the use of pepper spray by Defendants Nesbitt, Hirschy, and Crawford violated the Eighth Amendment because it was applied solely in retaliation for another lawsuit Plaintiff filed against prison staff.  (Id.)  Because the elements and facts necessary to consider these claims are identical, the Court addresses counts one and two together.

The defendants offer a "Statement of Undisputed Facts" (Doc. 106 at 3-4), which the Court construes as the "Statement of Material Facts" ordered in the September 11, 2023 Case Management and Scheduling Order (CMSO).  (Doc. 63 at 2.)  Plaintiff has countered with a "Statement of Disputed Facts" (Doc. 99 at 4–7), which the Court construes as the required "Response to Statement of Material Facts."[4]  Here, there is video footage of the incidents giving rise to Plaintiff's

---

[4] Neither the defendants' motion for summary judgment nor Plaintiff's response complies with the Court's CMSO.  As noted, the Court directed the party moving for summary judgment (here, the defendants) to create a statement of material facts that lists "each material fact alleged not to be disputed in separate, numbered paragraphs" with each fact supported by a pinpoint citation.  (Doc. 63 at 2.)  The defendants offer only a "Statement of Undisputed Facts." (Doc. 106 at 3–4.)  The "facts" are listed in paragraph form and not separately numbered, making it difficult for the Court to determine which (if any) facts are disputed by Plaintiff.  In response, Plaintiff has created his own unnumbered "Statement of Disputed Facts,"

excessive force claims. The Court considers the facts in the light depicted by the videos, but still draws all inferences from the videos in Plaintiff's favor. See Scott v. Harris, 550 U.S. 372, 380–81 (2007) (a court may properly consider video evidence in ruling on a motion for summary judgment and should view the facts "in the light depicted by the videotape").

The Court has reviewed the parties' pleadings and evidence and considers the following facts undisputed and relevant to counts one and two: At some time on August 26, 2021, Defendants Hirschy, Basilio, Crawford, Nesbitt, Kaiser, and several other staff members approached the back window of Plaintiff's cell and told him that they planned to retaliate against him for filing a previous civil rights suit against other prison employees. (Doc. 99 at 2–3.)[5] At around 8:41 p.m. on the same day, Plaintiff was observed covering his cell window, and an officer walked

---

which does not specifically address the defendants' facts, and certainly does not correlate on a one-to-one basis with the defendants' statement of facts. Rather, Plaintiff repeats the assertions from his complaint and adds additional factual allegations that were either not alleged in the original complaint or are irrelevant to the remaining claims in the complaint. To the extent Plaintiff alleges that he has evidence to counter the defendants' facts, he has not offered *pinpoint* citations to such evidence. In the CMSO, the Court advised that any fact Plaintiff "does not specifically controvert and not otherwise included in the Response to Statement of Disputed Material Facts may . . . be deemed undisputed if supported by record evidence." (Doc. 63 at 3.) Nevertheless, the Court will, as best it is able, attempt to determine which of the material facts are disputed. However, it will not mine the lengthy record to craft a winning argument or unearth beneficial evidence on either party's behalf. See, e.g., Chavez v. Sec'y, Fla., Dep't of Corr., 647 F.3d 1057, 1061 (11th Cir. 2011) ("[D]istrict court judges are not required to ferret out delectable facts buried in a massive record[.]").

[5] The defendants do not address this allegation in their motion for summary judgment, and therefore, the Court considers it undisputed.

9

over to his cell and told him to leave the window uncovered. (Ex. G at 1:41, Doc. 90-1 at 1; Doc. 90-2 at 1; Doc. 90-3 at 4.)[6] At 8:51 p.m., the video footage from Defendant Crawford's handheld camera shows that Defendant Hirschy walked to Plaintiff's cell. (Ex. F at 2:10.) Plaintiff can be briefly observed moving his bedding to the cell floor. (Id. at 2:16.)[7] Defendant Hirschy read a final notice and warning to Plaintiff who simply told Defendant Hirschy, "I don't care," and walked away from the door. (Id. at 2:22.) Plaintiff then paced his cell for approximately a minute and eventually laid on the floor, covered himself with his bedding, and remained still. (Id. at 2:22–5:44.) At 8:54 p.m., an officer approached Plaintiff's cell and asked if Plaintiff would comply with the order to submit to hand restraints. (Id. at 5:44.) Plaintiff did not comply or speak to staff. Roughly one minute later, at 8:55 p.m., Defendant Nesbitt applied three short bursts of pepper spray in the cell. (Ex. F at 6:06; Ex. G at 20:25; Doc. 90-1 at 1.) Four minutes passed between the officers' first order for Plaintiff to submit to hand restraints and the use of

---

[6] The defendants also assert that Defendant Hirschy observed or heard Plaintiff threaten staff. (Doc. 106 at 3.) However, Plaintiff denies making threats (Doc. 99 at 5), and the audio from Exhibits G and H is too muffled for the Court to discern any specific threat. Thus, the Court considers the question of whether Plaintiff made verbal threats to staff to be disputed.

[7] Plaintiff asserts that he was "sitting down quietly at the desk in [his] cell writing a letter" when the officer approached. (Doc. 99 at 3, 5.) This is clearly refuted by the video evidence, and the Court accepts the video's depiction of the facts. See Shaw v. City of Selma, 884 F.3d 1093, 1098 (11th Cir. 2018) (recognizing that when a video in evidence "obviously contradicts the nonmovant's version of the facts," the Court accepts the video's depiction "instead of the nonmovant's account") (quoting Pourmoghani-Esfahani v. Gee, 625 F.3d 1313, 1315 (11th Cir. 2010)(alterations adapted, internal quotation marks omitted)).

pepper spray. At approximately 9:02 p.m., Plaintiff approached the cell door and communicated with an officer that he was ready to come out. (Ex. F at 12:58; Doc. 90-1 at 1.) Plaintiff was cuffed and immediately escorted to the shower. (Ex. F at 15:20.) After showering, Plaintiff was taken to medical for a post-use-of-force exam. (Ex. F at 24:50.) He was then returned to his cell. (Ex. F at 28:00.)

In Eighth Amendment excessive force claims, the "core judicial inquiry" is "not whether a certain quantum of injury was sustained, but rather 'whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.'" Wilkins v. Gaddy, 559 U.S. 34, 37 (2010) (quoting Hudson v. McMillian, 503 U.S. 1, 7 (1992)). In determining whether force was applied maliciously and sadistically to cause harm, a court considers: (1) the need for the application of force; (2) the relationship between the need and the amount of force used; (3) the extent of the injury inflicted upon the prisoner; (4) the extent of the threat to the safety of staff and inmates, as reasonably perceived by the responsible officials based on facts known to them; and (5) any efforts made to temper the severity of a forceful response. Whitley v. Albers, 475 U.S. 312, 321 (1986). Any action taken should be viewed in light of the wide-ranging deference accorded to prison officials who are acting to preserve discipline and institutional security. Hudson v. McMillian, 503 U.S. 1, 6 (1992).

Applying the Whitley factors to the evidence—namely, the undisputed facts in the sworn use-of-force reports and what is seen in the videos—the Court concludes that no reasonable jury could find that excessive force was used during

11

the application of pepper spray. Although Plaintiff asserted in his complaint that there was no justification for *any* use of force, the video evidence does not support the assertion. Plaintiff was ordered, at least twice, to submit to hand restraints, yet refused to do so. Despite the presence of the video camera and having been told the consequences of not complying with the order to cuff up, Plaintiff did not communicate his alleged concerns of retaliation to the officers, point out that he was not threatening the staff, or otherwise seek clarification of the command. He simply disobeyed the order, choosing instead to *invite* the use of pepper spray by lying on his cell floor and covering himself with his bedding. "As a general matter, prison officials are authorized to use force when a prisoner fails to obey an order," and pepper spray "is an accepted non-lethal means of controlling unruly inmates." Jacoby v. Mack, 755 F. App'x 888, 898 (11th Cir. 2018) (citation omitted); see also Muhammad v. Sapp, 494 F. App–x 953, 957–58 (11th Cir. 2012) (use of chemical agents on inmate who refused to shave did not qualify as excessive force); Jones v. Shields, 207 F.3d 491, 497 (8th Cir. 2000) (concluding that the use of pepper spray after an inmate refused a direct order from his supervisor and questioned a guard's order was not malicious or sadistic). Even if Plaintiff thought the order to cuff up was unfair, he was not excused from complying. There is nothing unlawful about a corrections officer ordering an inmate to submit to hand restraints to be removed from his cell. In short, Plaintiff does not get to choose which orders to obey. See Pearson v. Taylor, 665 F. App'x 858, 864 (11th Cir. 2016) ("Officers are not required to convince every prisoner that their orders are reasonable and well-thought out

12

before resorting to force.") (citation omitted).  Accordingly, the first and fourth Whitley factors favor the defense.

Next, because pepper spray is "designed to be disabling without causing permanent physical injury and [is] a reasonable alternative to escalating a physical confrontation," its use is not disproportionate to the need to control an inmate who has failed to obey an order.  See Jacoby, 755 F. App'x at 898.  Notably, the camera confirms that Defendant Nesbitt applied only three very short bursts that were generally dispersed throughout the cell (while Plaintiff was under a blanket) and not aimed directly at Plaintiff's body.  Moreover, the officers conferred with medical staff before application to ensure that Plaintiff had no medical condition that could be exacerbated by pepper spray.  (Doc. 106 at 9; Doc. 90-1 at 1; Doc. 90-3 at 2.) Other than temporary discomfort, Plaintiff suffered no injury from the pepper spray.  Accordingly, the second and third Whitley factors favor the defense.

Finally, prison officials made efforts to temper the severity of their use of force by giving Plaintiff at least two chances to comply with verbal orders, warning him prior to using the spray that chemical agents would be used if he did not comply, minimizing the amount of spray that was used, and providing Plaintiff with a decontamination shower and post-use-of-force examination immediately after using the spray.  See Miles v. Jackson, 757 F. App'x 828, 830 (11th Cir. 2018) (recognizing that the fifth Whitley factor weighed against finding a constitutional violation because "[t]he officers' use of force was tempered because a nurse came to assist Miles within a minute of the incident").

Considering the above factors, the evidence does not show that the officers used pepper spray maliciously and sadistically to cause Plaintiff harm. Even if the defendants could have further counseled or cajoled Plaintiff to comply with their orders before resorting to pepper spray, Plaintiff's evidence of excessive force "falls far short of a showing that there was no plausible basis for [the defendants'] belief that this degree of force was necessary." Whitley, 475 U.S. at 323. The defendants are entitled to summary judgment on the excessive force claims relating to the use of pepper spray.

> **B. Defendant Basilio is entitled to summary judgment on Plaintiff's excessive force claims relating to application of handcuffs.**

In count three, Plaintiff asserts that one of the defendants placed "the hand restraints (handcuffs) on [his] wrist extra tight intentionally cutting off blood circulation which caused [his] hands/wrist to swell up eventually causing nerve damage in his hands." (Doc. 1 at 22.) The defense argues that this defendant—later identified by Plaintiff as Defendant Juan Basilio (Doc. 99 at 6)—did not act unconstitutionally because "Plaintiff's wrists are visible in the handcuffs with gaps clearly observed between the Plaintiff's wrists and the handcuffs." (Doc. 106 at 13.)[8] Indeed, a review of the video from Defendant Crawford's handheld video camera (for which the audio is clear) shows that: Plaintiff did not complain that his cuffs were too tight; did not appear to be in any distress from the cuffs; and was

---

[8] Defense counsel notes that she represents Defendant Basilio. (Doc. 106 at 13.)

14

cuffed for less than five minutes. (See Ex. F.) Moreover, as noted by the defense, it is evident from the video that the cuffs are not tight; gaps can be observed between Plaintiff's wrists and the metal rings. In fact, portions of the video show that the cuffs slipped so far down Plaintiff's arms that the cuff rings rested on the thenar portion of his palms. (Id. at 15:08–15:26 (Plaintiff's escort to the shower), 25:08–25:31 (Plaintiff's escort to medical); 27:50–28:40 (Plaintiff's escort to his cell).) In short, the evidence offered by the defense shows that Plaintiff's handcuffs were not applied particularly tightly, and Plaintiff cannot maintain an excessive force claim based solely on the application of handcuffs. See Huebner v. Bradshaw, 935 F.3d 1183, 1191 (11th Cir. 2019) (recognizing (in the context of excessive force during an arrest) that the Eleventh Circuit has "repeatedly held that painful handcuffing alone doesn't constitute excessive force"); Pizarro-Ramos v. Souza, No. 20-14477, 2021 WL 3009724, at *2 (11th Cir. Jul. 16, 2021) ("[T]his Court has indicated numerous times that the use of handcuffs, standing alone, generally does not constitute excessive force."); Sebastian v. Ortiz, 918 F.3d 1301, 1308 (11th Cir. 2019) ("[P]ainful handcuffing, without more, is not excessive force in cases where the resulting injuries are minimal." (quoting Rodriguez v. Farrell, 280 F.3d 1341, 1351 (11th Cir. 2002))).

Perhaps recognizing the futility of pursuing an excessive force claim as it relates to the *application* of handcuffs, Plaintiff argues in his response that Defendant Basilio intentionally bent Plaintiff's wrist backwards, solely to cause pain, when he *removed* the cuffs. (Doc. 99 at 6–7, 27, 29.) He also asserts that

15

Defendant Basilio allowed the flap door on his cell to slam onto his hands during the cuff removal to further injure him.  (Id. at 7.)   However, as discussed supra, these facts and theories of relief were not alleged in Plaintiff's complaint and cannot be raised for the first time here.   Defendant Basilio is entitled to summary judgment on the excessive force claims relating to the use of handcuffs.

## IV. Conclusion

After careful consideration of the record, the Court concludes that the defendants are entitled to summary judgment on counts one, two, and three.[9] With no remaining claims or defendants, this case will be closed.

Accordingly, it is **ORDERED**:

1. Defendant Kaiser is dismissed from this action under Rule 4(m) of the Federal Rules of Civil Procedure.

2. The defendants' amended motion for summary judgment (Doc. 106) is **GRANTED**.

3. The **Clerk** is **DIRECTED** to enter judgment in favor of the defendants and **CLOSE** this case.

**DONE AND ORDERED** in Fort Myers, Florida on May 23, 2024.

JOHN L. BADALAMENTI
UNITED STATES DISTRICT JUDGE

---

[9] Because the Court concludes that the defendants are entitled to summary judgment under Whitley, the Court will not address the defendants' arguments that they may be entitled to summary judgment for other reasons or that they are entitled to qualified immunity.

Copies to:   Johnny Burgess, Counsel of Record

Case 2:22-cv-00228-JLB-NPM   Document 108   Filed 05/23/25   Page 17 of 17 PageID 993